UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Keith Warzecha, having been duly sworn, do hereby state:

**AFFIANT'S TRAINING AND EXPERIENCE**

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA), Hartford District Office, and have been so since August 2010. I have been employed with the DEA as a Special Agent since 1996, and until August 2010, I was assigned to the Little Rock (Arkansas) District Office and have been so since August 2010. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, offenses set forth in Title 21, United States Code and other federal felony offenses. I am also a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. During the course of my career with the DEA, I have participated in numerous criminal investigations, including many investigations into suspected narcotics trafficking, money laundering and violations of firearms laws. My participation in these investigations has included: coordinating controlled purchases of narcotics utilizing confidential informants, cooperating witnesses, and undercover law enforcement officers; coordinating the execution of search and arrest warrants, many of which have resulted in the seizure of narcotics, firearms and drug paraphernalia used in narcotics distribution; conducting electronic and physical

surveillance, including participation in the conduct of wiretap investigations; analyzing records related to narcotics trafficking; testifying in court proceedings; and interviewing informants and cooperating witnesses, many of whom are involved in drug distribution activity, and other members of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport, and distribute controlled substances. I have participated in several investigations involving the use of court-authorized interception of wire and electronic communications. I have also received instruction relative to conducting drug investigations while attending the DEA Academy in Quantico, Virginia. In addition, I receive periodic in-service training relative to conducting drug investigations. In the course of my duties as a DEA Special Agent, I have prepared affidavits in support of applications for search warrants and arrest warrants and have executed numerous search and arrest warrants.

3. I have written and executed search warrants, which have resulted in the seizure of illegal drugs and evidence of drug violations. I have participated in numerous investigations involving individuals suspected of distributing illegal drugs in both state and federal drug investigation, coordinated controlled purchases of illegal drugs utilizing confidential sources and undercover police officers, written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs, and spoken with informants and subjects, as well as other local, state, and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have prepared numerous affidavits in support of applications for search and arrest warrants which have resulted in orders being issued by judges, and have led to the conviction of numerous defendants for violations of narcotics laws.

4. Based on my training, experience, I know that drug traffickers often have photographs, slides, or video movies of themselves, their co-conspirators, contraband, and assets purchased with drug proceeds. These photographs and video movies are normally in the drug trafficker's possession or residence or are frequently stored electronically on wireless telephones, i-Pads, computers, and other electronic devices. I also know that drug traffickers often use multiple phones to facilitate their illegal activities. Drug traffickers will utilize multiple phones in an effort to conceal their identities as well as to separate customers and source of supply. Drug traffickers will frequently change cellular devices and cellular numbers to avoid detection by law enforcement. Drug traffickers utilize their phones and various phone related features and applications, such as messenger and text messaging, to contact each other and arrange drug transactions. Drug traffickers often subscribe these phones in fictitious names and at fictitious addresses in an effort to conceal their identities and connection to the phones. Drug traffickers frequently store the contact information for criminal associates in their phones, often under an alias. Drug traffickers will also access internet-based applications such as Facebook, in furtherance of their trafficking activities. Drug traffickers will also utilize their phones' GPS or location services to arrange meetings and to find meet locations for the purpose of conduct narcotic transactions.

## REQUEST

5. I am one of the case agents investigating Chris Vanputten for violations of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Narcotics); Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute and Distribution of Narcotics); and Title 18 United States Code. Section 1001 (Making a False Statement to a Federal Officer) (hereafter referred to as the "Target Offenses").

6. As described below, law enforcement seized a silver i-Phone cellular telephone (Target Device-1) and an Alcatel smartphone (Target Device-2) at the time of Vanputten's arrest on March 7, 2019. I submit this Affidavit for the limited purpose of establishing probable cause for the issuance of warrants for these phones (hereafter referred to collectively as the "Target Devices"), described in more detail in **Attachment A**, for evidence pertaining to violations of the Target Offenses, described in more detail in **Attachment B**.

7. Because the information and evidence gathered during this investigation is voluminous, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth those facts which I believe are necessary to establish the existence of probable cause to support the requested warrants.

## PROBABLE CAUSE

8. On March 7, 2019, law enforcement executed an arrest warrant for Byron McClellan at his apartment he shares with his girlfriend (referred to herein as "S.N."). When inside the residence, law enforcement encountered Vanputten, who identified himself as "Christian King." Vanputten asserted that he had been staying with McClellan and S.N. for a few days. Vanputten was unable to produce any identification. Vanputten repeatedly asserted his name was King, even after law enforcement informed him that it was a crime to lie to federal law enforcement. One of the officers at the scene recognized Vanputten from prior police encounters and knew Vanputten had absconded from parole. Even after the officer verified Vanputten's identity with his parole officer by phone and law enforcement confirmed that he had two PRAWN warrants,[1] Vanputten continued to maintain that his name was "Christian King."

---

[1] PRAWN stands for Paperless Arrest Warrant Network.

4

9. At the time of entry into the apartment, McClellan and S.N. were located in the south bedroom of the apartment and Vanputten was located in the north bedroom of the apartment. Law enforcement obtained verbal and written consent to search the residence from the tenants, McClellan and S.N. They did not asked Vanputten for consent and he did not protest the search.

10. The north bedroom was not locked. According to S.N., the bedroom is used by McClellan's minor son who had not been staying at the home for a few weeks. S.N. further reported that Vanputten, whom she knew as "CZ," had not paid rent in exchange for staying with her and McClellan, Vanputten had been in the home for a couple weeks because he needed a place to stay, and Vanputten had not brought any items other than clothing in a backpack with him. S.N. further confirmed that she would have felt free to enter the north bedroom at any time notwithstanding Vanputten's stay in her home.

11. During the search of the north bedroom, law enforcement recovered a clear plastic bag containing suspected cocaine base, $2,701, and a suspected cocaine from a pile of male clothing on the floor in the closet. Field tests were conducted on the substances, which returned a positive reaction for the presence of cocaine. The gross weights for the suspect cocaine base and cocaine both exceed 28 grams. Law enforcement also seized what are believed to be Vanputten's phones from under a pillow in the bed in the north bedroom (Target Device-1) and from the floor in front of the closet in the north bedroom near the suspected cocaine base/cocaine (Target Device-2).

12. Given the suspected narcotics proceeds, suspected cocaine base/cocaine, the location the cellular devices, Vanputten's false statements regarding his identity, as well as my training and experience regarding common practices employed by narcotics traffickers with respect to cellular telephones, I believe that the Target Devices will contain evidence of the Target

Offenses. Indeed, as noted above, I know from my training and experience, that drug traffickers commonly utilize cellular devices to arrange and facilitate narcotics transactions. I also know that narcotics traffickers will often utilize more than one cellular device in an effort to segregate customers/sources of supply. I also know that narcotics traffickers will keep their phones close by, either on their person or in a location at which they can easily access the device to communicate with sources of supply/narcotic customers.

13. For the foregoing reasons, there is probable cause to believe, and I do believe, that evidence of the Target Offenses will be found on the Target Devices.

### INFORMATION REGARDING CELLULAR TELEPHONES AND THE REQUESTED SEARCH WARRANTS FOR THE TARGET DEVICES

14. Based on my training and experience, as well as information asserted herein, there is probable cause to believe, and I do believe, that within the Target Devices there will be found items which constitute evidence of the crimes of the Target Offenses.

15. Based on my training, experience, I also know that the aforementioned **Target Devices** may have some or all of the capabilities that allow each phone to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system (GPS) navigation device, a hand-held radio, and a personal digital assistant (PDA). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular device, as well as evidence relating to co-conspirators with whom the device was in contact.

16. With regards to the Target Devices, I request permission to seize and search the Target Devices for evidence relating to the Target Offenses.

17. Based on my training and experience, and as set forth in this affidavit, I know wireless telephones are used by co-conspirators to communicate efforts to conduct criminal activities and

it is likely that the Target Devices were used by the defendants to communicate with co-conspirators in the unlawful distribution of narcotics and/or firearms. Furthermore, based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of text communications between co-conspirators who distribute narcotics and/or firearms, or conspire to do so. Also based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of internet searches for locations and addresses used for storing and distributing narcotics and/or firearms. Also based on my training and experience, wireless phones may contain videos and images of co-conspirators, possible locations to ship, receive, or store narcotics and/or firearms, the quantity of narcotics and/or firearms, as well as shipping packages within which the narcotics are concealed. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones, including phones used by those involved in the distribution of narcotics and/or firearms:

      a. the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;
      b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;
      c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;
      d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;
      e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;
      f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;
      g. saved searches, locations, and route history in the memory of said devices;
      h. internet browsing history, to include, internet searches in the memory of said device; and

i. images and videos in the memory of said device.

18. It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

19. It is also requested that each warrant be deemed executed once the items listed in **Attachment A** have been extracted from the respective phone and that further analysis of the seized items be permitted at any time thereafter.

20. It is also requested that stored electronic information, data, information and images contained in the Target Devices may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS OF THE TARGET DEVICES

21. The warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

22. As described above and in **Attachment B**, the undersigned Affiant seeks permission to

search and seize evidence that the Target Devices might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. Searching for the evidence described in **Attachment B** may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in **Attachment B**, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, FBI, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in **Attachment B**.

## CONCLUSION

24. I submit that this affidavit supports probable cause for search warrants to seize the Target Devices described herein and to search the Target Devices for the items described in **Attachment B** for evidence of the Target Offenses.

_____
Keith Warzecha
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this __8th__ day of July 2019.

_____/s/ Robert M. Spector_____
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property to be searched, the Target Devices, are presently in law enforcement custody after being seized on March 7, 2019. The Target Devices are a silver i-Phone cellular telephone (Target Device-1) and an Alcatel smartphone (Target Device-2).

## ATTACHMENT B
## PARTICULAR ITEMS TO BE SEIZED

1. All records presently on the Target Devices (description in Attachment A incorporated herein), and all deleted records which are able to be recovered from the Target Devices as they related to Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Narcotics); Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute and Distribution of Narcotics); and Title 18 United States Code. Section 1001 (Making a False Statement to a Federal Officer) by Chris Vanputten and others, including:

   b. the telephone number, ESN number, serial number, and SIM card number;
   c. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory;
   d. descriptions of time, date, locations, items, or events showing the commission of, or connecting a person to, the above-described crimes;
   e. all records, however created or stored, which demonstrate ownership and use of the device;
   f. all records providing identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the device;
   g. any evidence showing the identity of the maker or user of the data and information contained in the device, such as passwords, sign-on codes, and

      program design;

h. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

i. saved searches, locations, and route history in the memory of said devices;

j. internet browsing history, to include, internet searches in the memory of said device; and

k. images and videos in the memory of said device;

2. It is specifically authorized that stored electronic information, data, information and images seized may be reproduced by printing, converting, or coping into storage in another device.

3. It is specifically authorized that the warrant will be deemed executed once the seized items are extracted or copied from the phone and that further analysis of the seized items extracted or copied from the phone is permitted at any time thereafter.